Thank you. This is the procedure, the lawyer procedure. Procedure? Lawyer procedure. I guess that's Michael over there. I guess so. Next we have Michael Bynum versus the Bank of New York Mellon as trustee for the CWMBS. First we'll hear from Mr. Bynum. I think it's the mic right under the light that works. That's what you need to talk to. It doesn't look like a mic, but that's what's picking up your voice. The dark thing right underneath the light, that long bar there, that's the microphone. That's just to confuse people. Okay. Your Honor, this appeal presents essentially four issues, broadly speaking procedural issues.  And the other three are essentially issues relative to pleading. The court below summarily dismissed three of appellant's claims, essentially claiming they were conclusory or futile or whatever. But the two major issues are both, I think, very serious, compelling, and dispositive issues. The first issue on diversity involves a party who is not before the court today, but who is a party in the case below, who was a party at the time of removal. And that was one Mr. David Guzman, who made claims that he was the rightful and lawful owner of the property in question. I dealt with this in a short letter brief on, I think it was June 29. There have been, the court below never really fully considered this apparent conflict in diversity, although the issues were on the record. The court merely said, well, when the case was originally filed, I had some evidence that Mr. Guzman was the proper party or was not a Texas citizen, but rather an Indiana citizen, and therefore I find there's complete diversity. What has overtaken us all is a decision by the Texas First Court of Appeals in Houston, finding that, in fact, during this all times relevant to the issue of diversity here, Mr. Guzman was not a real party in interest. He had deeded his ownership in the property to a gentleman named Preston Julian. His name does appear in various places in the record that are cited in our brief. The court found that the real party in interest was actually Mr. Julian. This means, looking back, that determining, testing diversity at the time of the filing of the removal, Mr. Guzman was a nominal party only, and the law is pretty clear that the citizenship of a nominal party needs to be disregarded and the court needs to take into account the citizenship of the real party in interest. I submit, Your Honors, that has been decisively concluded by the First Court of Appeals in Houston. The real party in interest was, in fact, one Preston Julian. And — But was he named in your lawsuit? He was not named in the original Texas case that was removed. But regardless of that fact, he needs to be considered. I cite the law in this, well, the Eighth Circuit law and D.C. Circuit law, that a real party in interest needs to be considered, and he was not considered. So there is evidence in the record at different places that Mr. Julian was a — there is the deed from — that surfaced in a later Texas proceeding from Mr. Guzman to Julian surfaced. That's in the record. The Harris County Appraisal District record is in there showing he's the owner. There are — the fact is Mr. Julian has now commenced proceedings that were — service was made the day after the supplemental letter brief was filed. So there's nothing in the record. But he is now in Texas claiming he's the owner. In fairness, judges, it's much more confused than that. There was a — in a Texas proceeding, Mr. Julian said, well, I have an unrecorded deed back to Mr. Guzman. It's unrecorded, but here it is. Then there's a trust issue floating out there where the three — Mr. Guzman, the real party, and Mr. Julian entered into some kind of a trust agreement dividing up ownership in the property. This was all documented before the trial court, but no resolution was made before the judge administratively closed the case. The case was administratively closed because the Texas court of appeals case was pending, that as I pointed out, resulted in a finding that, as I put it, Mr. Julian was the real party in interest and Mr. Guzman was only a nominal party, and also the appeal here before this court. So the case is currently administratively closed. We've been reporting faithfully to the trial judge every three months on status. As of mid-May, we reported on the decision of the Texas first court of appeals, which became finally final when the mandate was issued on June 2nd. The original decision was in March, but mandate wasn't issued, permitting times for appeal and reconsideration and that sort of thing on June 2nd. But there has been no further word out of the judge in the Southern District on this. I respectfully submit that issue needs to be sent back to the court for fact-finding and a determination on the record. No reason to try to pull an end run here. I think there's sufficient evidence in the record, but I wouldn't presume to suggest that the case should be reversed and rendered on that basis. I think, in fairness, it ought to go back to the trial court. Now, where do we draw the line? You said Mr. Julian was not mentioned in your lawsuit. What obligation does the court have to go beyond the complaint and see who possibly else could have been included in here, and we look at diversity and does the burden fall on the court to try to figure out who else maybe could have been? No, Your Honor, but we have a forum. The case is not closed, finally final. This is an issue of subject matter jurisdiction. It's ripe to be considered at any time, even for the first time on appeal. Clearly this kind of thing has happened before. Mr. Julian's identity, as I indicated to the court, has been revealed to the court below, but the judge took no action, having said, well, she didn't have the benefit of the Texas First Court decision at the time, but she said, literally, we had a hearing back kind of in a pretrial conference, but on the record with evidence for Mr. Guzman, for Mr. Julian, and the court there found, well, I had some evidence of who the proper party or the fact that Mr. Guzman was a Texas resident, or an Indiana resident, rather. Our position was he was a Texas resident, and there was a robust argument over that, but she found, well, I had some evidence. But the fact is this evidence was all in front of the court. We're raising it on appeal right now with the weight of the Texas First Court having resolved the issue of who, in effect, is the real party in interest. And I think Mr. Guzman was a party to that proceeding, and he is going to be collaterally stopped from denying the findings of the Texas First Court, which now the trial judge ought to have an opportunity to consider, since no one was really aware of who the real party in interest was, because this information came out in discovery actually pretty far into the case. But it's now before the court. It's clear to me, and I strongly suggest, that there is no diversity jurisdiction, because Mr. Julian is pretty clearly a Texas resident. And, frankly, I think it needs to go back on that basis. Now, did you bring this to the attention of the district court? We did, Your Honor. May 15 was the first report after the decision by the Texas First Court. We filed a letter to the court saying that the First Court has issued the decision. The mandate did not issue for another couple of weeks. Texas has a prolonged period of time for reconsideration and time for petition, writ to the Texas Supreme Court. No reconsideration motion filed, no petition to the Texas Supreme Court. Finally filed on June 2nd. Mr. Bishop, could you address the issue of the citizenship of the trustee and the trust, and how do we determine that? Yes, Your Honor. This all comes out of a flurry of case activity after AmeriCorps. I think we've covered this pretty broadly in our briefing, but I tried to go back to square one and was pointed in my search by the 1990 decision in Carden, Supreme by Mr. Justice Scalia. Carden was authored in 1990, 10 years after Navarro, and of course some 27 years previous to today. And it reaffirmed a proposition dating to 1889 in the Chapman case of the Supreme Court, which was the seminal case on citizenship for diversity purposes of unincorporated associations. The court at the time, it was a joint stock company that was in front of the court, not an incorporated entity, and the court viewed the joint stock company as merely a partnership, and therefore the citizenship of the members applied. Chapman was followed by United Steel Workers, or rather Great Southern Fire, a limited partnership before the Supreme Court in 1900, same proposition. No rule has been applied to partnership associations, although they may have some characteristics of corporations. Instead, when a partnership is a party, the court must look to the citizenship of the several persons composing the partnership association. That was followed in 1965 by United States Steel Workers v. Polygny. A labor union's citizenship for purposes of diversity is likewise determined by the reference to each of its members. Then along comes Cardin. Cardin follows in the wake of Navarro. Navarro is a case that I think has really caused the — hasn't caused the confusion. The confusion seems to relate to one word, the word traditional, that appears in the AmeriCorps decision. And a lot of lower courts have gone back to the Navarro case in 1980, 10 years before Cardin, when Cardin reaffirmed the principle that unincorporated associations take the citizenship of their members. But Navarro was a case where eight trustees sued in their own names, not on behalf of the trust, sued in their own names on a promissory note. The defense was — the jurisdictional issue raised was, well, membership is really — the membership of the — or citizenship is really your member's status. It was a real party and interest case. It was not a diversity jurisdictional case for the citizenship of the unincorporated association. Mr. Justice Scalia makes this extremely clear in Cardin. Counsel, let me ask you some questions. Do you hear me, counsel? I'm sorry, Judge. Okay. Crumbing a lot of ground, you don't have much time. The Cardin case itself, not just AmeriCorps and our decision in justice, says when a trustee has been sued or files suit in her own name, the only question a court must answer on issues of diversity jurisdiction or jurisdiction generally is whether that party is an active trustee who's controlled over the assets, et cetera. So how do you make sense of that for us when you're dealing with all these cases that are, it seems to me, covering a different point? That was Navarro, Your Honor, was it not? Well, Cardin is shown as the quote, but it's quoting Navarro. But it's as recent as Cardin, and it's picked up again in our case in justice. Your Honor, I was just getting to the point that in Cardin at, I think it's page 1016, parties there anticipated the Navarro argument, and Mr. Justice Scalia responded directly to it. And in essence, he said that was a case where the individual trustees were pursuing the claim in their own right as plaintiffs. The challenge was that, oh, the court, you ought to consider the membership citizenship status. And Mr. Justice Scalia said, absolutely not. It's a different issue. When a nonincorporated association or when a trustee sues in its own name, this is reflected in Federal Rule 17, I think it's A1E. It's been codified. That is the rule in Navarro. But that doesn't, that is, that's under capacity. It raises some of those juridical person issues. But the real question here is when the trust is a party, not just the trustees, but when the trust is a party, then the Cardin rule applies. We submit respectfully, Your Honor. That's the short of the argument. I'm sorry. And who did you sue here? Who are you trying to recover from? I beg your pardon? Who did you sue and who are you trying to recover from? Oh, Your Honor, this was the original Texas suit. These are all Texas causes of action. I know, but who? Set aside. The trust are the individual trustees. In Texas? Are the individual people members of the trust. The trust is a creature of New York law, and Texas law mirrors New York law on this. To sue a trust, you have to name the trustee. But we made it clear in our pleadings that we were suing the trust. Now, you have to name the trustee, but we made it clear we were suing the trust. And the claims are to quiet title, and I gave Your Honors a glimpse of why that issue is so confusing. Quiet title, to set aside for a void assignment, promissory estoppel, violations of the Texas Constitution that only became ripe after the Texas Supreme Court paved the way last spring. Thank you. Thank you. Good morning. May it please the Court? I'm going to start by addressing the jurisdictional arguments made by Mr. Bynane, and then I may touch on some additional issues if I have additional time. As to Mr. Bynane's first point regarding the substantial party dispute he claims between Mr. Guzman, who was a named defendant in the case, and this Julian Preston, who was not a named defendant in the case, there is no authority for the proposition that the Court is required to consider the citizenship of a non-party to a case for purposes of diversity. In fact, 28 U.S.C. Section 1332 makes clear that only the citizenship of parties is relevant to this inquiry. This is confirmed by this Court's decision in Corfield, which states that the real party to the controversy test does not require a federal court to consider the citizenship of a non-party who may have an interest in the case. Here, Mr. Preston, he ultimately purchased the property from Mr. Guzman. What happened was Bank of New York Mellon, as trustee for the trust, sold the property at foreclosure to Mr. Guzman. At the time that Mr. Bynane filed his lawsuit, he named Mr. Guzman in addition to the Bank of America, MERS, and Bank of New York Mellon as trustee. He did not name Mr. Julian. At no point during the case did he move to amend his pleadings to add Mr. Julian or any of these other phantom third parties to the case as defendants. So his proposition that Mr. Julian is somehow the real party in interest and weighs into the diversity question is not supported by any case law or statute or anything else. It's a red herring. Just for the Court's background, my clients were not parties to the state court proceeding between Mr. Guzman and Mr. Bynane, but I believe that was a forcible detainer action filed by Mr. Guzman to remove Mr. Bynane from the property. It was filed years ago, and by the time the case finished on appeal, Mr. Guzman no longer owned the property. He had conveyed it and sold it to Mr. Preston. That's how the Texas Court of Appeals arrived at the conclusion that for that particular dispute, who's going to forcibly remove Mr. Bynane from the property? The real party in interest is Mr. Julian. That has nothing to do with the lawsuit that was filed by Mr. Bynane against Bank of America, MERS, Bank of New York Mellon, and Mr. Guzman. Any questions on that point? As to the second theory, we're dealing with this AmeriCold issue that has propped up. The Texas district courts are kind of all over the place. Since the AmeriCold decision came out, we've had several sua sponte orders from different district court judges asking for further briefing. We had one in this case by Judge Atlas that was post-grant of our motion to dismiss. Judge Atlas reopened the case and asked for briefing on the issue of whether AmeriCold disturbed the court's subject matter jurisdiction. The parties briefed the issue, and ultimately Judge Atlas concluded that the AmeriCold decision did not disturb the court's subject matter jurisdiction because under Navarro, a trustee such as Bank of New York Mellon, in this case, who possesses certain customary powers to hold, manage, and dispose of assets for the benefit of the others, is the real party, the real and substantial party to the controversy. Therefore, only the citizenship of the trustee and not the citizenship of the members of the trust or certificate holders or whatever the term is in the particular pooling and servicing agreement, that is not relevant. Here, in our case, this court's decision in justice, which came out a few months ago, is directly on point. We have language in the pooling and servicing agreement in this case that is virtually identical to the provisions that were relied upon by the court in justice. Those include section 2.01, which states that the depositor conveys all right, title, and property, section 10.08, which is like section 12.08 in the justice case, which says that the trustee has the power to manage and control the assets. There are several other provisions that we set out for the court in our supplemental letter brief that was filed about a week ago. Our situation here, Bank of New York Mellon, as the trustee, is essentially in the same shoes as Wells Fargo was in the justice case. We believe that the court correctly determined in the justice case that Wells Fargo was the real and substantial party because it had real and substantial control over the assets. You said that the district courts are kind of all over the place or . . . Well, prior to justice. Before this, and then we have the justice decision, but for some reason the judges on that panel did not publish the opinion.  Do you think we need . . . Higginbotham, Prado, and Graves? It might have been Prado. I don't know. Do you think we need to publish an opinion that might give the courts, the district courts, the truck courts . . . Yes, I think that would offer guidance to the courts. We have . . . I do a lot of work for these types of entities, and we have . . . this issue comes up a lot. Anytime you have a trustee in the relationship, as the trustee for a real estate mortgage investment conduit, a REMIC, oftentimes we get a motion to remand, and the judges are all over the place. You have Judge Atlas in our case who found, yes, it's the trustee. The trustee has the real and substantial control. Then you have Judge Gray-Miller in Guillaume who issued this opinion that went, in my opinion, off the reservation and went into an analysis of issues that departed way from Americold and Navarro. He got into other issues and kind of set the bar, so to speak, very high in terms of what you have to show for purposes of removal to prove diversity if a trustee is implicated in a case. I believe, and I think that the court agreed in justice, and as we've seen in Navarro, that as long as you show that the trustee has real and substantial control over the assets, that's it. The inquiry ends there. You don't need to go look at these other peripheral provisions in the pooling and servicing agreement that dictate the various duties and responsibilities of the other parties to the pooling and servicing agreement. One of the questions factually seems to me in this case is how much control the trustee does have over the mortgages, for example. As I understand it, Bank of New York Mellon holds the documents for each mortgage in the pool, ensures all necessary documents are present, some clarity that litigation can be brought in some respects by the bank. How much of that digging into the weeds of the control? It seems to me that total control over the assets, if we really looked at what all the bundle of sticks might be over control, they may not all be there. I don't know, because I don't have a list of everything that could be controlled on the pool of mortgages versus what the Bank of New York got. There may not be an identity between those lists. So how much control, I mean, if we're going to ride on this, we may not ride in your favor, we may ride in the opponent's favor. How much clarity needs to be brought to the amount of control of the assets being real and substantial? Well, Your Honor, I think you need to look at Section 2.01 and 10.08, which are dispositive and the same provisions that were in the Justice case that show that it is the intent of the pooling and servicing agreement that all right title and interest in the trust assets goes to the trustee. Also, the 2.01 states all right title and interest is transferred to the trustee. So in terms of the ownership of the assets themselves, that is in the name of the trustee for the benefit of the certificate holders of the trust, which is a fiduciary relationship. I hate to get into this traditional versus business trust dichotomy here, but that's in the traditional sense what you think of when you're looking at a trust. So here, there are other parties to the pooling and servicing agreement. For example, a master servicer. The master servicer is the one that collects payments, you know, bills the homeowners, collects payments, handles, you know, checks to make sure that property taxes and things of that sort are paid so that the lien held by the trustee remains in first position, that sort of thing, administering and collection type of duties. But the master servicer is working at the direction and under the control of the trustee, and I believe that's section 3.01 that we cited in our letter brief. So there are other parties, and as a result, there are provisions in the pooling and servicing agreement that kind of give the other parties the opportunity to kind of make sure everybody's doing their job. You know, it's not like this person can overrule this person or, you know, a situation like that, but it's kind of, you know, like in the situation where a master servicer is not doing its job, either the trustee or the certificate holders can take steps to address that. So, I mean, there are other provisions regarding the management of how the trust itself operates, but the management and control over the disposition of the assets that are in the trust, that is all the job of the trustee. I don't know if that answers your question. Well, I'm just concerned about the imagination of the creators of such documents. Judge King's imagination used to create documents like this, I think, in their private practice days, and it could go well beyond the sorts of things that you're talking about, and the relative role of the trustee versus the relative role of who knows who else has some sort of obligation. It's one thing to say, as the Supreme Court has, that you need real and substantial control, but what that means and make sure whatever we write doesn't step on the variations or ignore the variations that can come up in these sorts of instruments worries me. I can't go too wrong just quoting the Supreme Court back to itself, I suppose, but I'm not sure what that means in every case, even if the answer here you think is clear. It's going to be applied, particularly if we publish in other cases as well. Right, and I think, to your point, Judge, in Mr. Bynane's reply brief, he made a statement to the effect of the master servicer is more important than the trustee, and we stated in our letter brief that if the master servicer was that important, he should have named the master servicer as a defendant. He didn't. He only named the trustee. That was it. Is that a function of Texas law? When you sue for an asset in a trust, does Texas say you have to sue the trustee no matter how the trust might vary from the usual trust? Well, it does, but also he makes no allegations against the trust itself. All of the allegations go against the trustee. So there are some cases at the district court level where plaintiffs have made allegations specifically against a trust. They name the trustee. Sometimes they also name the trust. And then they make allegations against both the trust and the trustee to kind of cover themselves in view of this issue, and we have encountered that situation, and there have been several decisions in the district courts. I have some of those here where the court said, look, you named the trust and you named the trustee, and so if the trust itself is named or if there are allegations against the trust itself, then the removing party has to address the real and substantial interest issue. If I was defending against that, I would say the trustee is the real and substantial party, the trust is a nominal party, and here's why. Okay. Maybe it will be more of an issue for another day, but whatever we do now to be not written with sufficient precision. I think for today, the justice decision is right on point, and we fall squarely within justice. And in view of the Navarro language, you know, it's clear based on that precedent that the trustee here was the real and substantial party, had real and substantial control over the assets, and there was no reason and no requirement to provide the citizenship of the members or certificate holders of the trust. So there was diversity jurisdiction. The court properly exercised subject matter jurisdiction. Okay. Thank you. Mr. Bynum. Thank you. The appellee relies very heavily on Your Honor's decision in Justice v. Wells Fargo. Of course, Your Honor knows better than most being on the panel what was stated there, but it was very perfunctory when it came to this issue of traditional trust versus business trust. And, by the way, we still strongly urge, you know, go back to the seminal decisions in Chapman and Cardin. I did misspeak about Mr. Justice Scalia's distinguishing the Navarro case, which is where all this business trust, traditional trust talk comes up. It is at 191. I misspoke. It's 489, I think 489 U.S. 181. But to go back to Justice, the court's finding was very perfunctory. There the trust beneficiaries had no real power. There was no talk about a managing or a master servicer, as there is in this case. And the finding was the trustee wields the very sort of real and substantial control over the assets in its name. It was long ago contemplated by the Supreme Court in Navarro. Again, I suggest there is a distinction to be made, and Mr. Justice Scalia makes it far better than I could. But when we look to our reply brief, pages I think five through eight, Your Honors, it shows that this is a case where the trustee did not have unlimited power over the trust. It was shared not just with the master servicer, but as we point out in our brief, shared with the certificate holders as well. I think this is, even under the Navarro kind of analysis, this is a crucial distinction, and Militai strongly in a finding that this is a business trust. Trustee, for example, holding title. Well, held title in its representative capacity, not in any kind of individual capacity, an important distinction. Had no ability to invest the trust's assets. The language is really kind of fuzzy, but it's questionable about the trustee's right to sue as trustee. There are some limitations about the master servicer having the rights to protect the trust in the same manner. Then there's a sharing of powers with the master servicer and the certificate holders. Master servicer, for example, services, administers mortgage loans, registers the loans on the MERS system, provides funds for taxes, also responsible is the master servicer for trust investments. Master servicer. Master servicer, by the way, was countrywide. They're not in this case. You didn't bring a lawsuit against a master servicer? No, Your Honor. Again, the proper party defendant is the trustee, as trustee for the trust. But clearly we brought the action against the trust. The trust is the party here, not Bank of New York Mellon in its individual capacity. But there is such an entity as the master servicer. The trustee doesn't speak for the trust? Well, not on all accounts. The master servicer takes care of the records and insurance. Who does the master servicer work for? That's an A. For the certificate holders, Your Honor. Pardon me? Certificate holders. And the certificate holders, if I'm not mistaken, they have the power, certificate holders, to terminate the master servicer. If defaults occur, certificate holders may direct the trustee to bring suit. Majority of the certificate holders can remove the trustee at any time and appoint a successor. They have the right alone to trigger an event of default, certificate holders. Majority must approve any amendments. They have significant powers regarding amending the pooling service agreement. One thought just came to mind. I understand that this kind of real estate apparatus is known as a REMIC, real estate mortgage investing conduit. And just as a footnote for Your Honors, and hearkening back to the Chapman analysis and the Cardin analysis, these certificate holders are treated under the Internal Revenue Code as partners. And income flows through to them, much like maybe an LLC, but also more like other non-incorporated entities. Thank you, Mr. Boat. I see my time has expired. Thank you, Your Honor. The Court will take a short recess. Thank you.